Daryl Lewis v. Kalev Mutond, et al. Mr. Godfrey for the appellant, Mr. Weiner for the appellees. Good morning. May it please the Court, Meryl Godfrey on behalf of Appellant Daryl Lewis. I'm reserving three minutes for rebuttal. As the Supreme Court noted in Samantar v. Yusuf, courts of appeals have applied the rule that foreign sovereign immunity extends to an individual official for acts committed in his official capacity, but not to an official who acts beyond the scope of his authority. The conduct-based immunity the defendants have invoked here is limited by its very nature to a certain category of conduct. It can apply only to actions that are shown by those invoking the immunity to be within the scope of their actual legal authority as governmental officials. The question for this Court is whether it was within the scope of these defendants' actual authority to torture Mr. Lewis. The answer to that question is no. Why does that question really matter, given the language of the statute? I mean, the statute explicitly says that in Section 2A, defining liability, that an individual who, under actual or apparent authority or color of law of any foreign nation, subjects an individual to torture. So it seems to me that you would be arguing that Congress said, we don't care whether the person is acting under authority, because even if they are, they're liable anyway. I mean, that's what the statute says. Yes, that is what the statute says. And, in fact, in the legislative history, both the Senate and the House noted that in cases just like this one, there would be liability. What the Senate said on page 8 of its report was, because no state officially condones torture or extrajudicial killings, few such acts, if any, would fall under the rubric of official actions taken in the course of an official's duties. And the House report also notes that sovereign immunity would not generally be an available defense. The only thing that was reserved was status-based immunities for heads of state and diplomats. So on that issue, it certainly makes sense to look at the language of the TVPA and put forward the argument that you're making. But if you concede that there's at least some immunities that kick in to limit the coverage of the TVPA, which it sounds like you just did, at least with respect to status-based immunity, then why would we stop there, other than it's true that the legislative history makes that reference. So if one were going to read the legislative history and think that the statute is completely coterminous with what the legislative history says, I would understand that argument. But beyond the legislative history, why, looking at the statute, would we think that there's some forms of immunity that kick in to limit the coverage of the TVPA, but other forms of immunity that don't? Because the Torture Victim Protection Act was directed at a specific issue, which was the liability of individuals, and it's limited to individuals, who carry out torture or extrajudicial killings. And so Congress was specifically focused on cases like this one, where you have an individual who would be liable. That's also true of the status-based immunity, though, right? That would also be an individual who would allegedly be involved in torture? Yes. But because it's a status, yes, and that's correct. And because it's a status-based immunity, it's something that is very clearly defined under the common law. It's limited to either the head of state or the foreign minister, very clearly defined. We're talking about a whole broad category of conduct that Congress wanted to reach, and it's certainly rational for Congress to want to reach that, except for the extreme case of bringing into court the president or the monarch or the foreign minister of a foreign country that is sitting. And that status-based immunity applies to the sitting official. I mean, notwithstanding whether Congress intended to impose liability on a foreign official, even if they are acting pursuant to authority, Samantar held that common law immunity still governs, and the third prong of the common law immunity under Restatement Section 66 that's cited in Samantar provides that the immunity will hold if basically the effect of exercising jurisdiction would be to enforce a rule of law against a state. So why isn't that a problem here? Well, it has to satisfy both prongs, of course. It has to be within the scope of authority under the second prong, which it's not here, because there's no actual authority to torture. Well, let's suppose for the sake of my question that I find convincing and I am willing to defer to the letter from the DRC saying that they're acting within authority, so you've got to deal with the third prong. So under the third prong, the question is whether this is effectively an action against the state. And in a case where we are seeking only personal liability from the personal assets of these individuals for actions that have no ‑‑ where we're seeking to impose no liability on the state. What if the state's going to indemnify them? Well, whether the state indemnifies them or not is something that the state can choose to do, but the act of enforcing the Torture Victim Protection Act against these ‑‑ What if the state's going to defend them, you know, provide counsel for them? The foreign state's choice to defend or to indemnify can't change the scope of immunity or the liability. How is it a choice if the state is taking the position that these people were performing official acts for us? It's not really a choice. It's part and parcel of them saying that these are official acts. Well, the question under the restatement, though, is whether the actual imposition of liability on these defendants is an act that imposes liability on the foreign state. And whether the foreign state chooses to indemnify or defend is not something that comes within the test under the restatement for that reason. Because the way the restatement ‑‑ Well, what comes under, what does the restatement mean? How are we supposed to construe what the restatement means when it says the effect of exercising jurisdiction would be to enforce a rule of law against the state? The best example is Rishikoff v. Mortada, which was a district court case in this circuit, which held that because the plaintiff had sought to impose joint and several liability on the state as well as the individuals, that the effect of imposing liability there would be to sue the state, the foreign state. Okay. That's one example, though. But how is ‑‑ I mean, is that the only way that you're enforcing a rule of law against the state? No. But in a circumstance where we're seeking to impose, where the plaintiff is the master of his complaint, the plaintiff pleads only personal liability against individuals for actions that they took that were outside the scope of their authority, in that situation the imposition of liability on those officials isn't an imposition of liability against the state. The state is not the effective defendant there. So I'm not saying this is necessarily wrong. I just want to understand the scope of your argument. So it sounds like the upshot of your position is with respect to this third criterion under the restatement, whether it's a rule against the state. In your view, as long as the complaint is framed as one that seeks individual liability against an official rather than official liability against a sovereign, that criterion is not satisfied, and so the official couldn't claim immunity. I'm not saying that's wrong. I'm just saying I want to understand that that's your position, that any time it's what we would conventionally describe as an individual capacity suit, such that the recovery sought only against an individual qua individual, then immunity doesn't kick in. Well, I wouldn't rule out the possibility of artful pleading. I think a court has to look at the substance, has to look at what's actually going to happen here. And so I wouldn't adopt just a bright-line rule, but in general, yes. In general, yeah. And then I take it like also Samantar discussed situations in which, for example, if the state's a real party in interest and has to be brought into play, then that's a situation in which immunity would kick in because the FSIA immunity vis-a-vis the state would kick in. Exactly. Exactly. But in rough contours, your view is that that third criterion really focuses on whether the suit is brought against an individual in their individual capacity or not. Yes, that would be satisfied from their individual assets. Okay. Yes. Are you going to say anything about personal jurisdiction? You know, personal jurisdiction wasn't addressed by the district court. It needs to be addressed in the first instance there. We certainly pleaded a basis for personal jurisdiction. The basis is that these defendants targeted Americans for the purpose of drawing the United States into conflict with the DRC. They alleged that there was no ---- That contradicts your complaint. In what way? I forget what paragraph it is, but you allege that the only reason that your client, Mr. Lewis, got stopped was because of his association with the opposition leader, not because he was an American, not because of any impact on the United States, but he was stopped. Am I right about that? That's my memory. That's why he was stopped. What we're challenging here is the torture. And the torture occurred because when the defendants had him in custody ---- The torture occurred because he was arrested. No, it occurred because when they had him in custody, they came up with a story that the DRC was being infiltrated by the United States through mercenaries, and that drew a response from the State Department. So this was intended to draw the United States into conflict with the DRC. Where is that allocation? It's in paragraph 30, I believe it's 35 of the complaint. Paragraph 35, Tomway asserted that 600 United States citizens had entered the DRC in the preceding six months. And in paragraph 37, Tomway was trying to create a narrative about U.S. military personnel infiltrating the DRC. And we reference here the State Department's response to this. I believe that's paragraph 40. The State Department made a press release denying this. What I was referring to, I just looked, is paragraph 19. Yes, Judge Randolph, and you're right. That's what the complaint alleges regarding why they were detained. But the continued detention and the torture were for the purpose of causing harm in the United States. Well, I don't know about that because ---- I don't know if that follows either. Right, that's the question. Because I do understand that the complaint has allegations in it about the American citizenship of the plaintiff. And the theory behind the complaint, as I understand it, is that the point that was sought to be made by the regime was that these were American mercenaries, and American mercenaries brought in to try to destabilize the DRC. But that doesn't necessarily mean that it intends to visit consequences vis-à-vis the United States. It's just that these are American mercenaries who are coming in to destabilize things that are going on here. Well, to be clear, we sought jurisdictional discovery in the district court. That hasn't been ruled on. If the allegations were ---- if, in reviewing this, the district court found the allegations wanting, we would seek leave to amend. And under Mouwani v. Bin Laden, the test really is whether residents of the forum, whether the defendants directed their activities purposefully at residents of the forum. And here that happens. I think that that's, you know, we said that, but I think that that was effectively limited or overruled by the Supreme Court in Walden v. Fiore in 2014. Because there, the court said that it's not sufficient that the defendant directed their actions at a person kind of knowing that they were a resident of the forum state, or even because they were a resident of the forum state. That just the fact that the person was a resident and they knew that and they targeted them for the tort or whatever the wrongdoing isn't sufficient. They said we still have to look at whether there are effects in the forum state and whether it, overall, there are contacts with the forum state and contacts with the resident of the forum state, even if intentional, isn't sufficient. I mean, that's the holding. They don't cite or reference Mouwani, but I think that it really limits that language in Mouwani. Well, still, in this situation where Americans are singled out for torture for purposes of drawing the United States State Department into conflict with the DRC for purposes of causing effects in the United States, that still satisfies that language in Fiore. Did the district court simply not rule on your request for jurisdictional discovery, or did the district court deny the request? It did not rule. It didn't address personal jurisdiction at all, which is why what we're asking the court to do is to reverse on the issue of immunity and remand to the district court, which would then address personal jurisdiction in the first instance. Is your theory, well, first of all, the Price, our opinion, Price also says that simply because the target is an American, they targeted American citizens, that's not sufficient to establish personal jurisdiction, right? No, I understood Price to say that simply because someone was an American wasn't enough, but it didn't involve facts where Americans were singled out and tortured specifically. Okay, but I want to get your theory. Is your theory that your client was tortured in order to get a confession, that he was a mercenary, and the purpose of getting that confession was to put pressure on the State Department to do what? It was to implicate the United States as trying to overthrow the current government of the DRC, that the United States had sent mercenaries into the DRC to overthrow President Kabila. But what's the purpose of implicating the United States? Is it to make sure that the opposition leader will not be successful? Well, to be clear, we don't have the full story because we didn't get the jurisdictional discovery, but the basic outlines are that the opposition, that the current government was trying to paint the opposition as enthralled to the United States. See, I thought where you were going was that I think you need a visa to go to the Congo, don't you? I believe so. Yeah, and I thought where you were going is to put pressure on the State Department to not issue visas to individuals who might or might not or may act as bodyguards or any other such thing. Yes, that's certainly, I mean, we don't spell that out, but that's certainly implicit. Yeah, and it's not in the complaint. Right, but those are exactly the kinds of effects that were intended here by torturing Americans specifically. Thank you. Thank you. Mr. Weiner. May it please the Court, Robert Weiner for Defendants Tambwe and Mutande. There are two reasons, as the Court recognizes, why there is no jurisdiction in this case. The first, the Court ruled on below, which is that the defendants are immune, under official immunity, and the second is that there's no personal jurisdiction. Since the Court last focused on personal jurisdiction, let me start there. There are no allegations that there are intended effects in the United States. There are only allegations that there were Americans who were singled out, and those allegations are an information in belief. It says Mr. Lewis and other Americans were singled out because they were Americans, not because the United States did anything, but because they were Americans, and it doesn't identify the other Americans. It's not information in belief, and there is nothing about what they were supposed to have done. So can I ask a question just in terms of our purview to dispose of a case on this basis, given that the District Court, as I recall, specifically said it wasn't reaching the question of personal jurisdiction. So the District Court says it's not reaching the question of personal jurisdiction. There is a motion that has been filed, I think, for jurisdictional discovery vis-a-vis personal jurisdiction that wasn't resolved, and yes, we can affirm decisions on alternative grounds. Of course, there's always that authority, but do you know of a situation in which, an analogous situation in which an appellate court affirmed on personal jurisdiction, even though there was a pending motion for jurisdictional discovery that wasn't resolved? Well, first, Your Honor, I don't believe there was a motion. I don't recall a motion. I think he said it in his brief. Okay, so at least there was an overture to the effect that we would like to file a motion, even if the motion, in fact, hadn't been filed. Second, this Court would have to look at whether there was any basis for discovery. There have to be allegations in the complaint where discovery would be appropriate, and that discovery would not be just speculative. That discovery would lead to or possibly lead to a determination on personal jurisdiction, and the allegations in the complaint are completely inadequate. They say nothing. Well, what kind of allegations with respect to effects are needed? Well, like the allegations in Malawi, where there were intended effects in the United States. There are terrorist activities that were overseas, but they're intended to have an impact in the United States, to sow terror in the United States. Here, it's obvious from the complaint that what was going on is an election in the DRC, and that they were trying to say that there was a mercenary plot with Americans and South Africans. And so this is just the plaintiff might have pleaded differently. I don't think there was any basis for pleading it this way as opposed to any other way. So let's suppose what was pled was that these individuals from the DRC put out an order that if we find any Americans acting as bodyguards to the opposition leader, kill them. And American bodyguards were killed, so there were extrajudicial killings. And so this is a TVPA case, and those are the allegations that for whatever reason, they didn't like Americans, they wanted to send some sort of a message, maybe deter Americans from coming over there. They killed Americans. Is that enough to at least get some jurisdictional discovery? There would have to be allegations regarding intended effects in the United States. It is a geographic notion, not just a citizenship notion. And that's what Warden holds, that you really need to have activities directed at the United States. And this court held in Price, and Judge Bates held in Nipkin, that it's not enough that there are injuries or even torture or extrajudicial killing inflicted on Americans overseas. But part of the question that comes up. So we would properly dismiss that TVPA case, that complaint? Absent any allegations that there was an effort to project into the United States to cause effects in the United States, then I think this court would need to dismiss. So if the complaint fleshed out the allegations in the way Judge Wilkins' question did, such that the reason that there was a targeted extrajudicial killing of an American is at least in part to deter Americans from coming, that would be enough? I think that I'm not sure that would be enough because to deter Americans from coming is not necessarily an effort to have an effect in the United States. It might be. I don't understand. What's stopping short of having an effect in the United States if what you're saying is anybody in the United States, meaning people over there in the United States, listen to me, I don't want you to come here? If that's what the allegation was and it was designed to have an effect in the United States, they would have an argument that there was jurisdiction or at least an argument for discovery. But here there is nothing like that. All they say is that they picked out unnamed Americans and Mr. Lewis, and that was because there was an election and they were alleged to be plotting U.S. mercenaries, not the U.S. government, and Mr. Katoomba, the presidential candidate. And there's a reference to the State Department. But I don't understand why it has to be a focus on the U.S. government because the hypothetical in which there's an effect on U.S. citizens because the claim is we don't want any Americans coming here. I don't care if it's a government program. Maybe the government doesn't even want you to come. Maybe the United States government doesn't want you to come here either. But I don't want people coming here from America. There's already a deterrence. People were really not anxious to go visit the Congo. I knew the ambassador, and he said, come visit me, and that was a joke. I think, Your Honor, that it would have to be more than U.S. citizens. It doesn't have to be the U.S. government, but it would have to be intended to cause effects in the United States, and there is not anything that remotely approaches such an allegation in the complaint. And I don't think they could allege that with a good faith basis given that what they've alleged so far was thin, to say the least. Yes, I'm just trying to tease out the limitations because suppose the allegation was there was a campaign to torture anybody who came here from America. That's what the allegation is. In order to deter Americans from coming to that country. Well, I'm buying into your notion now and saying that the complaint doesn't spell that out. It just says the policy of the DRC was to torture anyone here who's from America. I think under the terms of the Price decision, that would not be enough, but it might be enough under those circumstances to justify some discovery. Okay. But with regard to the allegation about the State Department response, when you look at that response, and there's a link to it in the plaintiff's complaint, that response doesn't say anything about the involvement of the United States. It says, Mr. Lewis, we believe the allegations are false, period. It doesn't say anything about U.S. government isn't conspiring. And, in fact, when Mr. Lewis, as the letter from the ambassador here says, when Mr. Lewis was released, the United States thanked the DRC for allowing consular visits. And so I don't think that there was any demonstrated opposition here, any effort to implicate the United States. So I think that that doesn't hit any of the milestones for jurisdiction. And then we have the second ground here, which is immunity. Now, the plaintiff sued these individuals, the Attorney General essentially and the Director of National Intelligence, and he sued them purportedly in their personal capacity. A personal capacity suit is one where the individual is alleged to be acting beyond their authority because they are not acting on behalf of the state but for their personal gain. Not one where they're acting on behalf of the state, but the allegation is the state didn't have authority to do the things that they did. And that's what we have here. And case after case, including most significantly the Bell House case, has said that there is, that the illegality, alleged illegality of an action under the state's law is not sufficient to defeat official immunity. And that's the state. So can I ask a question about Bell House and the general lay of the land here? So part of what we talked about in your colleague's argument is the third criterion under the restatement, which is whether it's, forgetting the exact language of the restatement, but it's whether the effective exercising jurisdiction would be to enforce a rule of law against the state. Yes. So let's just assume for present purposes we're past the official acts part and we're on to this part. I know there's arguments on the other part too, but let's just assume for present purposes of this question that we're past that. As to this part of it, which is whether you'd be enforcing a rule of law against the state, Bell House doesn't say anything about that, right, because Bell House assumed that the governing framework was prescribed by the FSIA, and the FSIA just doesn't treat with this. So on this issue, Bell House doesn't come into play. Am I right? Bell House does not speak to that issue. So then on this issue, as I understood your argument in your brief, it seemed largely coterminous with the argument about official acts, which is to say that as long as these individuals were engaged in official acts, then by nature the ruling would seek a rule enforceable against the state. I think that's so, Your Honor, but I think there's more to it as well. Yeah, what's the extra? Because as I read the restatement, the way the restatement is framed, and everybody seems to be operating on the assumption that the restatement sets forth the governing framework, the restatement assumes that the acts were carried out in their official capacity and then says there's still this extra requirement for immunity to apply, which it has to be a rule enforceable against the state. So what's the extra that we're talking about under your theory beyond the fact that these were official acts? So let me say first, leading into that, Your Honor, that the State Department in suggestion of immunity after suggestion of immunity  And the problem with the plaintiff's argument is that they confuse enforcement of a judgment for money with enforcement of a rule of law. This enforces a rule of law because it rules on the legality of an action of a foreign government. But I think that's the problem with your argument, or potential Achilles' heel for your argument, because Restatement Section 6 talks about how we define enforcing a rule of law as opposed to enforcing or prescribing the law. And so, yes, any time you're taking any sort of adjudicatory or litigation, extraterritorial, in another country, I can't say that word, you are enforcing a rule of law. But Restatement Section 66 says enforcing a rule of law against the state. And then illustration number three in the comments, in giving an example of when that happens, this gives an example where there's a suit against someone in the foreign state where they're requesting damages against the individual that will be paid by the state. So it's not just that the individual in the foreign state is being sued, but that he is going, or she is going to have to satisfy the damages necessarily with funds from that state. So Restatement 66 adds the words against the state. Those words have to have some meaning. They have to do some work. And so those suggestions of immunity I don't think help you because they are directed at the Restatement Section 6 issue of whether you're just enforcing a rule of law in another state. Do you see what I'm saying? Yes, Your Honor, but I think you have to take a practical view. And the practical view is that when you pass on the legality of a state action, you are enforcing a rule of law. Otherwise, there would be no official immunity. All that would happen is a plaintiff could sue an official instead of the government, and that would be the end of the immunity. It can't mean that. Well, so that wouldn't be the case necessarily because any time the State Department comes in, there would be immunity. Well, if you take the position that the State Department's coming in is determinative, yes, but that doesn't relate to the degree to which this – it doesn't relate to the interpretation of the Restatement where you have to interpret it whether if it stands alone it makes any sense. And I will tell you the State Department's position now is that that third prong doesn't do very much. I don't want to divert you, so keep in mind where you're going, but the talk about the State Department triggers a question that came to me when I was preparing this case, and that is, is there a particular procedure for involving the State Department in a litigation or is it simply sufficient if the ambassador to the Congo writes a letter? What goes on here in terms of the State Department's involvement? It generally is a letter from an official of the country to the ambassador. That is usually the case because the ambassador is the spokesman for the country. The court can also do it sua sponte or could ask for the – Well, that's where I was going. I mean, it's common for the Supreme Court to invite the views of the Solicitor General, and since the State Department's views here could be conclusive, why shouldn't the court invite the State Department to weigh in? I think that's within the court's discretion. That's what the district court did in Matard versus Dictor in the Second Circuit. So the court could do that, but based on your experience in this area, I take it that the State Department knows that it can do that, and in certain situations the State Department, when it's elicited to do it by a letter of the kind that's at issue here, the State Department will file a statement of interest. And usually, I think, we would infer something from the fact that the State – in other words, it's not inadvertent that the State Department decided not to file something. Well, Your Honor, I think in this case, if the State Department thought that the district court had gotten the issue wrong, they would be in here with a statement of interest that was trying to correct the law. And so, yes, I think you can draw an inference, and the inference is that the State Department is perfectly content to leave it where it lay. Well, wasn't there an inference the other way because it didn't say anything to the district courts? No, Your Honor, because we did talk to the State Department on that issue, and the State Department told us that their practice is not to intervene or not to speak in the district court cases, in most cases, where the other defenses have a shot at getting rid of the case. In other words, if they thought we were going to win, they wouldn't come in. And that's – they didn't say it in those words, Your Honor, but that's how we interpreted it when we spoke to them. And so I think, at best, there could be no inference drawn from what happened in the district court, but I think it's a fair inference as to what happened here. I assume that my time has expired, Your Honor. No, I'd still like to hear from you on – you were going to, I think, flesh out what's the extra. What – you brought into play the State Department's statement of interest as an indication, at least, of what ought to be the rule that governs in this area in terms of this third criterion under the restatement. So it can't be that where we're talking about official acts, that it's necessarily a case in which the third criterion is met, such that it involves a rule enforced against the state. So what else has to happen besides it being a case that involves official acts? Well, I think, Your Honor, where you have a case like this one, and I think this was the case in a number of cases, like Matar and Dover or Attai, where you have a ratification by the state, where the state has stepped forward and said, this is our act, then I think you have a particularly strong case. Sure, but okay, then let me ask the question this way. What's the case that wouldn't be enough, even though you do have official acts? I think, well, for one thing, as Your Honor pointed out before, where the State Department comes in, that could be a situation where the State Department says, these may be official acts, but we do not grant their consent. Right, but as you rightly pointed out, I'm talking about one where we're trying to construe this actual language. And so in terms of this actual language, what's the situation in which you get past official acts, but nonetheless it's still not something where it's a rule enforceable against the state? Your Honor, I think I would have to say that I don't think that this prong has much independent force. Even though the restatement frames it in terms that clearly give it independent force? Well, it could have independent force, I think, in a situation where, like the car, like an accident. I think that is a situation. That's an example in the restatement. It's an example. It is that example. And that's a situation where you don't have a core function of the state, and it's not something where the state would find it necessary or appropriate to step forward and take responsibility and ownership of the acts. When you have something that's in the official capacity, the person was driving at work or to work or from work or doing errands. Under those circumstances, you could have an enforcement of the rule. But isn't that example, doesn't it explicitly say that they were driving and had the accident while they were performing their official duties? Yes, but under those circumstances, the restatement says it wouldn't be enforcing a rule of law, and that's because it's not something that is, and the extra here is that this goes to high government officials and core government functions that are ratified by the government. That is just, what is going on in that kind of case is just an accident. But it's just, so there's obviously that example, which the restatement itself illustrates as a basis for the delta between official acts and circumstances in which they're an official act, but it's not one seeking rule against the state. The problem for us is we don't know why the restatement says that one doesn't qualify. One argument as to why that doesn't qualify is because the claim wasn't seeking damages against the state. It was only going against the individual, which would favor your colleague's position. Another argument is, no, it's something about actually what was going on, that what was going on is it was just driving, and although it was driving in the scope of one's official duties, that's not a core official duty because driving is something that everybody does all the time, and it's not intimately bound up with the exercise of sovereign prerogatives, and we just don't know which one of those is the limiting principle, right? I think it's not clear from the restatement, but I think that to say that damages against an individual employee don't matter, well, first of all, we have all the cases like Chipolone that say that damages are a way of enforcing policy, but the issue is is it enforcing policy when it's against the employee instead of the state, and as a practical matter, you're going to chill employees. If an employee knows that they take a particular act on behalf of the state, they face damages in this other jurisdiction. Well, then that is going to impede and chill their carrying out those. But what this illustrates, and it's moving in that direction, is it may be a mistake to read the restatement as if it's a code and to draw any kind of inferences out of cases that are so far different than the situation that we have here may be an error. I just don't know that there's much so-called common law about immunity of foreign officials that has any bearing on the particular circumstances of this case. Where does it come from? Not the federal courts, at least after Erie it shouldn't be. I think, Your Honor, I'd say that the common law, when Asamatar suggests that the common law is in large part what the State Department says, because before there was the FSIA, the State Department was making these determinations. They weren't common law cases. The Supreme Court said they might have been. But there wasn't a statute at that point, so they were just making— The pre-FSIA cases. The pre-FSIA. And so now you have the State Department, in the case of officials, making those same kinds of determinations. And in making those determinations, they have said that there is no illegality exception to official capacity, there's no just codems exception, and that the TVPA does not trump official immunity. And so that, I would submit, is the common law of official immunity at this stage. The TVPA may—I don't think that the Supreme Court held that the TVPA didn't trump official immunity. That wasn't the issue. The issue was whether immunity applies through either the FSIA or through the common law. And they held it would apply through the common law. But I think that what the Supreme Court has said, and I know our court has said it, is that we're supposed to give—if there's explicit intent of Congress that we can divine from the text of the statute, even if it kind of overrides international law norms, we give effect to the intent of the statute. Because Congress, you know, in their wisdom, can promulgate a statute that violates international law if they want to. It's not like, you know, the Constitution, where we would strike that statute down if it violates international law and that's what Congress wanted to do. We give effect to the intent of the statute. Here, Congress explicitly said that if the person is acting under authority, either actual or apparent, and they commit torture, there's liability. So I don't see how we square Congress's intent with your argument that, well, if we adjudicate here and make some sort of finding that this, you know, official act was torture when the DRC says it wasn't, we are somehow doing something wrong here, you know, essentially having some sort of improper effect against the state. Well, that's the effect that Congress explicitly wanted us to have, was to say if it's torture, we don't care whether it's authorized, we don't care if it's your policy, we're going to hold you liable for it because there's actually international law against torture. So what do we do with that? Well, Your Honor, I think, first of all, I think that the – I would say that the TVPA is silent on whether – on the role of common law. And you can't say because it proscribes certain action that that overrules immunity because any proscription then would overrule immunity. 1983 would overrule immunity. And yet the law is that if the statute does not specifically overrule the common law, then the common law applies if you can reconcile it. And you can reconcile it. And, by the way, I think in the Manoharan case, which is where this Court said that common law status immunities survived in a TVPA case, well, because the statute was silent on the issue, I think silence is silence. There's no reason that the silence as to that common law immunity means something different than the silence as to this common law immunity. That would be odd, I think. But beyond that, the TVPA, if it can be reconciled with immunity, that is the question. Does recognizing immunity leave significant parts of the TVPA? Isn't the reconciliation with immunity law, that specific phrase, enforcing a rule of law against the state, isn't that the reconciliation? I think that making that the reconciliation, Your Honor, would do away with immunity law for individuals, because all somebody would have to do is sue the individual. And here we have plenty of circumstances. The court held in Belos where they were interpreting what is the meaning of official capacity. Yes, it was under the statute, but it was the same analysis. And the analysis was that there were exceptions where the TVPA would continue to apply and that that was sufficient to reconcile the TVPA to immunity. And there are circumstances where the TVPA would apply, most significantly where the country doesn't assert immunity, which is what happened in the Marcos cases, or where there's no government, which is what happened in the Salmentara cases, or where the government takes no position, which was in the Phil Arteaga case. Most importantly, when the State Department comes in and says that there should be no immunity, because that is where this decision that affects foreign policy interests most appropriately lies. That's not to say the court doesn't have a significant role, but the Supreme Court in Salmentara said that the court, when the State Department comes in, the court is supposed to honor what the State Department says. And there's a suggestion in addition in Salmentara that where the State Department doesn't come in, courts should look to the positions the State Department has taken. And the State Department here has been very clear that the TVPA does not per se trope the official immunity. Thank you. But that's all that gets you so far. I think it gets us the whole way, Your Honor, because the immunity here is an immunity for acts that the State has said were on behalf of the State. And the State is really the real party in interest. Any action here will be an adjudication of the actions of the DRC, and that implicates the issues that are important that underlay the immunity determination. Before you say that, just one technical question based on something you just said, which is you said the State is really the real party in interest. But was that an argument that was made in the district court because if the State was the real party in interest, then the FSAA would come into play? We didn't argue it in those terms, Your Honor, but we argued that the ratification made this an act of the State essentially. The ratification. Okay. Thank you, Mr. Weiner. Thank you, Your Honor. So we'll give you your two minutes of rebuttal, please. I have just one quick point to make, which is that in Samantar, the Supreme Court noted specifically the third prong of the restatement test. Although it wasn't applying it, it noted on page 321 that this third prong was a difference between the FSAA and the common law and that that was a reason why the foreign official immunity was still governed by the common law. And then later in the opinion, the Supreme Court emphasized that in this case, respondents have sued petitioner in his personal capacity and seek damages from his own pockets and that as a result it was properly governed by the common law. So this is clearly a significant prong in the Supreme Court's view, although it didn't apply it directly in this case. And what's your response to your colleague's argument that if all the third prong means is that a plaintiff can style his complaint as one involving individual capacity, then that effectively does away with official immunity? Well, there's all sorts of situations where that won't be true. You have to satisfy a cabal entremly, so you have to have a substantial case. You have to be able to show. But that has to be true even for official capacity, so that's not drawing the line. And that doesn't derogate from the fact that allowing a plaintiff to style a complaint as individual capacity doesn't amount to anything because that allegation isn't one that's subject voluntarily as far as I know because all that's saying is where am I seeking recovery from? That's entirely up to the plaintiff. Well, if the case is against the state as the real party in interest, then that argument's going to be raised and you're not going to have that situation. But in a case where it's truly only personal liability sought against an individual, those are cases that is a fairly narrow category. And, in fact, the Fourth Circuit on the Samantar Remand held that an entire category of violations of Hughes-Coggan's violations were subject to liability and it hasn't opened the floodgates. And so it's not as easy as just naming an individual official. You have to actually be able to articulate facts that show that the individuals took actions for which they're personally liable and you have to seek liability from them in their personal capacity. Okay, then I feel like I'm just missing something basic. I just want to make sure I understand. So I guess the question would be, in any case that can get past the pleadings, if it were an official capacity case, isn't it true that simply by restyling it as an individual capacity case, which is to say the plaintiff makes the choice only to seek recovery against the individual and not to try to get to the bank account of the state, it's only seeking the city bank account of the individual, that that transformation can happen and it would mean that immunity automatically wouldn't come into play? I don't think that there's a – I don't think you can say categorically that somebody couldn't articulate why in a particular circumstance a foreign official may, if he has to provide personal liability in a particular circumstance, why that would have some effect on the state. I mean, there could be such a circumstance. I'm not saying there couldn't, but in this situation there isn't anything like that. Okay. Thank you, counsel. Thank you, counsel. The case is submitted. Thank you.
judges: Srinivasan, Wilkins, Randolph